TOWN OF MILTON *v.* PAUL BRUSO.

November Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 2, 1940.

*M. H. Alexander* for the defendant.

*Latham & Latham* for the plaintiff.

BUTTLES, J. The plaintiff town seeks to recover in an action of contract under P. L. 3935 for medical, hospital and burial expenses paid by the plaintiff for the deceased wife of the defendant during the period of one year prior to the bringing of the action. The case was tried by the court on an agreed statement of facts, which the court found to be the facts of the case. Judgment was rendered for the plaintiff, to which the defendant excepted.

P. L. 3935 reads thus: "If a married man of sufficient ability to support and maintain his wife, by his neglect or default suffers her to become chargeable as a pauper upon a town, such town may recover the expense incurred in the support of such wife in an action of contract, on this statute, against the husband, but recovery shall not be had for expenses so incurred more than one year previous to bringing such action." It appears from the agreed statement that for about one year following their marriage in 1917 the defendant and his wife lived together on the defendant's farm in the town of Georgia, when the wife became dissatisfied and they moved to St. Albans into a rented tenement where they lived for about six months, and dur-

ing all of this time the defendant furnished his wife with a good home, well furnished, and she was well provided for with the necessary food, medical attention and clothing. Thereupon the defendant's wife left him, without fault on his part, and went to reside elsewhere. The defendant did not know where his wife went or with whom she lived or what her condition was or had been until her death in August, 1937, of which he was informed at his home in St. Albans by a selectman and the attorney for the plaintiff town. At that time these officers requested the defendant to reimburse the town for the expense it had incurred for care, hospitalization and funeral expenses of the wife amounting to over six hundred dollars.

The agreed statement further sets forth that during said talk the defendant (if the same is pertinent to any issue which is submitted to the court) stated that he had thirty dollars and would give that amount to them as that was all of the money that he had at that time. This clearly was an offer to compromise or buy his peace which under the rule could not have been shown in evidence. 22 C. J. 308. We therefore do not treat the defendant's offer as affecting the question here at issue, which is whether the defendant by his neglect or default suffered his wife to become chargeable as a pauper upon the plaintiff town within the meaning of the statute.

It is the husband's right to choose and establish the matrimonial domicile, and in general it is the duty of the wife to submit to the determination of the husband and to follow him to the domicile of his choice. 30 C. J. 511. If the husband provides a suitable home, it is the duty of the wife to live with him, if properly supported and treated. *Bennett* v. *Bennett*, 91 Vt. 54, 56, 99 Atl. 254; *Powell* v. *Powell*, 29 Vt. 148, 150. In the present case the husband did not insist on his right of choice but established a new domicile when the wife became dissatisfied with the one which he had chosen. This domicile she elected to leave after six months, through no fault of the husband. Thereafter, it is stated, he did not know of her whereabouts.

It is the general rule that where, through no fault of the husband, the wife leaves his home and refuses to cohabit with him he is not responsible for necessaries furnished her by third persons in the absence of a contract by him to pay therefor. 30 C. J. 595, Sec. 131. The law of this State is in

conformity with this rule. In order to enable one to recover for necessaries furnished a wife who lives apart from her husband it must be shown, either that they live apart by mutual consent, or that the separation is by fault of the husband. *Norcross* v. *Rodgers,* 30 Vt. 588, 590, 73 Am. Dec. 323. See, also, *Brown* v. *Mudgett,* 40 Vt. 68, 71; *Thorne & Co.* v. *Kathan,* 51 Vt. 520, 523; *Morse* v. *Morse,* 65 Vt. 112, 115, 26 Atl. 528.

■ Clearly under the circumstances disclosed by the agreed statement the defendant would not have been liable for necessaries furnished the wife up to the time she became chargeable as a pauper upon the plaintiff town. Does it appear that by his neglect or default the defendant suffered her to become so chargeable?

■ Default is defined in Webster's New International Dictionary as a failing or failure; omission of that which ought to be done; neglect to do what duty or law requires. Baldwin's Revision of Bouvier's Law Dictionary defines it as the nonperformance of a duty, whether arising under a contract or otherwise. A default is failure to perform a legal duty. *Easterwood* v. *Willingham,* Tex. Civ. App., 47 S. W. 2d. 393, 395. This is the common meaning of the word and we think the sense in which it is here used. Since the defendant was not under a legal duty to support his wife, under the circumstances disclosed, there was no default on his part. Neglect is defined in Webster's New International Dictionary as the omission of proper attention; avoidance or disregard of duty from heedlessness, indifference or wilfulness; failure to do, use or heed anything; negligence, as neglect of business, of health, of economy. In *State ex rel. Fulton* v. *Coburn,* 133 Ohio St. 192, 12 N. E. 2d. 471, 477, it is said that neglect means to omit doing some particular thing; to not do what ought to be done, and as used in a legal sense means not doing what is required by law to be done. As used in a Connecticut statute providing for the support of a needy person by certain designated relatives, and providing for bringing an action against such a relative who neglects to provide support it is held in *Tulin* v. *Tulin,* 124 Conn. 518, 200 Atl. 819, 821 that the word "neglect" imports an omission accompanied by some kind of culpability in the conduct of the parties and does not mean a mere omission or failure without fault. *Lathrop* v. *Lathrop,* 78 Conn. 650, 63 Atl. 514, 515, was in reference to the alleged neglect of a

husband to furnish his wife with such support as the statute required and "neglect" was there defined in the same words as in the Tulin case.

 While the word is sometimes used in some connections in a less restricted sense we are satisfied that as used in the statute we are considering neglect does not mean a mere omission without fault. Neglect there imports an omission accompanied by some kind of culpability—not doing what is required by law to be done. But from the agreed statement it does not appear that anything required by law was left undone or that there was any omission by the defendant accompanied by any kind of culpability. And the facts in the case being stated by agreement of the parties none except necessary inferences therefrom can be drawn or considered. *Hooper, Tr.* v. *Kennedy,* 100 Vt. 314, 317, 137 Atl. 194; *City of Barre* v. *Town of Bethel,* 102 Vt. 22, 25, 145 Atl. 410.

 It follows from what has been said that the defendant did not, by his neglect or default, suffer his wife to become chargeable as a pauper upon the plaintiff town.

*Judgment reversed and judgment for the defendant to recover his costs.*