## DUDLEY *v.* MONTGOMERY WARD & CO., INCORPORATED

[No. 13, September Term, 1969.]

*Decided October 10, 1969.*

248

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*Henry L. Conway, Jr.,* with whom was *John A. Blondell* and *Blondell & Conway* on the brief, for appellant.

*Robert A. Williams* for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Montgomery Ward and Co., Incorporated, on August 20, 1968, filed suit against William C. Dudley (Dudley) and his wife Mary in the Circuit Court for Anne Arundel County for that it furnished them "at their request" goods and merchandise for which they had not paid, and moved for summary judgment, with a supporting affidavit and attached statement of account dated August 14, 1968, which showed an account with "William C. Dudley, 1506 Eastway, Glen Burnie, Md. and Mary J. Dudley (his wife), 513 First Avenue SW, Glen Burnie, Md.," on which there was due a balance for goods purchased in May, June, July and August 1968 of $2,374.71. Dudley, the appellant, on September 18, filed general issue pleas and an answer which alleged a genuine dispute between the parties of material facts since "at the time these charges were made by his wife he was living separate and apart from her because of her adultery," and that the goods sold were not necessaries. The answer was supported by an affidavit made by Dudley reciting (1) the adultery and the allegation that the wife had thrown him out of the marital abode; (2) that when the May debit was made, Dudley's case against the wife for divorce based upon her adultery was pending, and at the time of the August debit had been tried and was being held sub curia; and (3) that no children were

born of the marriage; "and so I believe and therefore aver that $2,374.71 worth of goods and merchandise * * * [were] not for suitable necessaries but were purchased by my wife to spite me."

On December 24 Dudley moved for summary judgment on the grounds that (1) "as shown by his affidavit in opposition to plaintiff's motion for summary judgment" he never authorized the purchase of the goods; and (2) on March 9, 1968, several months after the parties had separated, Mrs. Dudley committed adultery as demonstrated by an opinion of Judge Melvin in the Circuit Court for Anne Arundel County so holding, and a decree of that court signed by Judge Melvin on December 10 divorcing Dudley a vinculo from his wife. Photostatic copies of the opinion and decree were filed with Dudley's motion. Dudley did not file a new affidavit but referred in his motion to the one he had filed earlier.

Montgomery Ward answered that motion by asserting that the account "was opened in the name of and behalf of [Dudley] by his then legal wife," that Montgomery Ward had no knowledge of the separation, the adultery or the divorce proceedings "at the time the account was opened and the merchandise purchased and charged," that Dudley's denial in his affidavit that the goods were necessaries is expressed as a belief and is not a statement of fact, and that Dudley's motion was not supported by an affidavit. In an affidavit in support of its answer, the supplier swore that "the items represented by the account" were necessaries.

Montgomery Ward and Dudley each asked for a hearing, and one was held. On the record we have detailed, Judge Childs granted Montgomery Ward a summary judgment against Dudley, apparently accepting either its theory that Dudley's affidavit was ineffective as a block to its motion because it violated Maryland Rule 610 b in making only a bald general assertion that the goods furnished were not necessaries, in failing to set forth facts that would be admissible in evidence and to assert that the affiant was competent to testify to such facts,

and that they were within his personal knowledge; or its theory that Dudley's motion for summary judgment required a valid supporting affidavit to be effective, or both.

We agree that Dudley's affidavit was defective and that if Dudley's case had depended solely on his affidavit Montgomery Ward would have been entitled to judgment. *Frush v. Brooks,* 204 Md. 315; *Tri-State Properties, Inc. v. Middleman,* 238 Md. 41.

We think, however, that the law governing a husband's liability for necessaries furnished his wife makes the undisputed fact that the wife had left the husband and committed adultery the only revelant and material fact in the case and entitled Dudley after the hearing to a judgment in his favor as a matter of law. Generally, a husband has a duty to support his wife and if he fails to do so will be liable to pay one who furnishes the wife necessaries even though the couple are living apart voluntarily or without the fault of the wife. We need not discuss or decide the theories variously relied on to impose this liability on the husband. One view — apparently the Maryland view, *see McFerren v. Goldsmith-Stern Co.,* 137 Md. 573—is that the wife becomes an agent of the husband to pledge his credit. This agency has been called "implied," "of necessity" and "compulsory." 41 Am. Jur. 2d *Husband and Wife* § 349; 2 *Williston, Contracts* (3d ed.) § 270A, p. 151. The Restatement —Restitution—suggests that the true basis may be the rules making up the doctrine of unjust enrichment.[1]

Whatever its sound basis, this liability of the husband arises and continues by reason of the marital tie, *McFerren v. Goldsmith-Stern Co., supra; Winchester v. Winchester,* 138 Md. 95. When that tie is severed by a court or when the wife misbehaves to a point which

---

1. Restatement, Restitution § 113: "A person who has performed the non-contractual duty of another by supplying a third person with necessaries which in violation of such duty the other had failed to supply, although acting without the other's knowledge or consent, is entitled to restitution therefor from the other if he acted unofficiously and with intent to charge therefor."

would permit the husband to obtain its severance, his obligation to pay for supplied necessaries terminates completely. *Kerner v. Eastern Hospital,* 210 Md. 375, 379, 381-82, flatly so held in a recognition of and obedience to the long and well established rule of law to that effect.[2]

Adultery, uncondoned, is a leading form of wifely misbehavior which ends the husband's liability to provide or pay for necessaries.[3]

One who supplies necessaries to a wife without the approval of the husband is not helped by his lack of knowledge of her desertion or her adultery. Under the general holdings of the courts, he supplies a wife at his financial peril and bears the burden of proving that the husband is liable. Judge Delaplaine for the Court said in *Kerner v. Eastern Hospital* at p. 381 of 210 Md.:

> "But when a wife deserts her husband without his fault she forfeits all rights to support from him, and carries with her no authority to pledge his credit even for necessaries [citing cases]. This is especially true where the person furnishing the necessaries knows that the husband and wife are not living together, and yet makes no further inquiries."

*Kerner's* holding that the seriously erring wife cannot pledge the husband's credit even though the supplier does not know that she is separated and at fault is well sup-

---

2. *See Tod v. Stokes,* 12 Mod. 244, 88 English Repr. 1294; *Town of Milton v. Bruso* (Vt.), 10 A. 2d 203; *M'Cutchen v. M'Gahay* (N.Y.), 11 Johns 281; *Sawyer v. Richards* (N.H.), 23 A. 150; *Denver Dry Goods Co. v. Jester* (Colo.), 152 P. 903; 41 Am.Jur.2d Husband & Wife § 333; Annotation, Necessaries Furnished to Wife—Liability, 60 A.L.R.2d 7, § 16, pp. 31-32.

3. *See Morris v. Martin,* 1 Strange 647, 93 English Repr. 757; *Manwairing v. Sands,* 2 Strange 706, 93 English Repr. 797; *Bolton v. Prentice,* 2 Strange 1214, 93 English Repr. 1136; *Hunter v. Boucher* (Mass.), 3 Pickering 289; *Gill v. Read,* 5 R. I. 343; *Alley v. Winn,* 134 Mass. 77; *State v. Schweitzer* (Conn.), 18 A. 787; *Webster v. Boyle-Pryor Const. Co.* (Mo. App.), 144 S.W.2d 828; *State v. Falkner* (N.C.), 108 S.E. 756; 41 Am.Jur.2d, Husband and Wife, § 354; Annotation, Necessaries Furnished Wife—Liability, 60 A.L.R.2d 7, 33, § 17 n. 1.

ported by the cases. *See Morris v. Martin,* 1 Strange 647, 93 English Repr. 757; *Manwairing v. Sands,* 2 Strange 706, 93 English Repr. 797; *Bolton v. Prentice,* 2 Strange 1214, 93 English Repr. 1136 (reporter's note); *Cowell v. Phillips* (R.I.), 20 A. 933; *Vusler v. Cox* (N.J.), 22 A. 347; *Sibley v. Gilmer* (N.C.), 32 S. E. 964; *Audrain County v. Muir* (Mo.), 249 S. W. 383; *Steinfield v. Girrard* (Me.), 68 A. 630; *Smith v. Smith* (Mich.), 41 N. W. 499; *James McCreery & Co. v. Martin* (N.J.), 87 A. 433; 41 Am.Jur.2d *Husband & Wife* § 363; Annotation, *Necessaries Furnished Wife—Liability,* 60 A.L.R.2d 7, 43, § 27 n. 5.[4]

In view of the established law and the undisputed desertion and adultery, Montgomery Ward's claim of lack of notice and lack of knowledge of the facts [5] and its

---

4. These cases make it clear that the duty of a husband to provide his wife with necessaries is one which is imposed by the law and as such the husband's liability to one who has so supplied the wife is solely dependent upon the existence of the circumstances which give rise to that duty, that is, the couple is living together or are separated voluntarily or without the fault of the wife, and the husband has failed to adequately supply the wife with necessaries. Thus, the misconduct of the wife brings that duty to an end, regardless of notice to the supplier that a separation has occurred, or that the wife is at fault. The Cowell, Sibley, Smith and McCreery cases point out that a separate *contractual* duty of the husband may arise and continue even after a separation at the fault of the wife where the husband, by his conduct prior to the separation, has led the supplier to believe that his wife has authority to trade on his credit. In such a situation the wife will continue as an apparent agent of the husband until the supplier receives notice of the separation or that an agency relationship no longer exists. *See also Jones v. Gutman,* 88 Md. 355; *McFerren v. Goldsmith-Stern Co.,* 137 Md. 573. But, as in our case,

"there seems [to be] no ground for [an assumption that the wife has authority to pledge the credit of the husband for necessaries, unless he receives notice to the contrary] on the part of the tradesman who deals with the wife for the first time. He is supposed to know that the wife's power to pledge her husband's credit is not without limit, that she can only do so for the purpose of obtaining those necessaries which the law requires him to furnish her, and to the extent that they remain unfurnished, he can readily ascertain by inquiry the fact of the wife's authority to pledge her husband's credit for the purchases which she desires to make." *James McCreery & Co. v. Martin* (N.J.), 87 A. 433, 434.

5. If a court properly could, as it cannot, make findings of fact or draw inferences of fact in considering the entry of a summary judgment, it would be hard to escape a finding that Mont-

claim that the goods were necessaries, even if assumed to be true in fact, were irrelevant and immaterial.

Our view is that such non-compliance with the provisions of the summary judgment rules as there was should not have required judgment for a plaintiff who, on the record before the trial judge when judgment was entered, was clearly not entitled to prevail as a matter of law.

Rule 610 a 1 provides that a party against whom a claim is asserted may make a motion for summary judgment "at any time." Rule 610 a 3 provides:

> "The motion must be supported by affidavit when filed with the pleading asserting the claim or before the adverse party has filed his initial pleading to it; otherwise the motion may be made with or without supporting affidavits."

Since Dudley's motion for summary judgment was filed after his pleas had been filed, no supporting affidavit was then required by the rules. *Fletcher v. Flournoy*, 198 Md. 53, 58. Further, Rule 610 d 1 says that summary judgment shall be rendered forthwith:

> "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * Where appropriate, the court on the hearing may render judgment for the opposing party even though he has not filed a cross-motion for summary judgment."

Entry of a summary judgment has been approved by this Court under the last sentence of Rule 610 d 1 and the inherent power of the Court, although the summary judgment rules had not been fully complied with. *Flet-*

---

gomery Ward was on notice that the Dudleys were separated in view of the account attached to its affidavit, which revealed that its records show them as living at separate addresses.

*cher v. Flournoy, supra; Frush v. Brooks, supra; Hunt v. Montgomery County,* 248 Md. 403; *Myers v. Montgomery Ward & Co., Inc.,* 253 Md. 282. We think the facts and circumstances of this case would have made it appropriate to enter judgment for Dudley in any event.

> *Judgment reversed and judgment entered for William C. Dudley for costs. Costs in this Court to be paid by appellee.*